LAWSON (WELCH v.). See Case No. 17, 369.

LAWSON, The ALBERT G. See Case No. 7, 364.

LAY (McCOUN v.). See Case No. 8,729.

LAZARUS (MURRAY v.). See Case No. 9,-962.

## Case No. 8,152.

### The L. B. GOLDSMITH.

[Newb. 123.] [1]

District Court, D. Michigan. 1856.

PRACTICE IN ADMIRALTY—REMNANTS — DISTRIBUTION BY COURT—JURISDICTION ONCE ATTACHED —EFFECT OF ANSWERS TO SPECIAL INTERROGATORIES.

1. Under the 43d rule of admiralty practice, the party entitled to remnants or the surplus in court, can only obtain it by petition or motion, and any one having an interest has a right to intervene "pro interesse suo," whether his application involves the settlement of partnership accounts or not.

2. When several part owners, having unsettled accounts between them, petition for a statement of account and payment of their shares, and the managing owner of the boat asks that the whole should be paid over to him; it would be unjust to pay the surplus to the managing owner, and turn the other petitioners over to a bill in chancery, for the recovery of their interest; and it would operate oppressively to retain the amount in the registry of the court until the matter was settled in equity.

[Cited in The John E. Mulford, 18 Fed. 457.]

[1] [Reported by John S. Newberry, Esq.]

3. When the admiralty has taken jurisdiction of the subject matter, it will continue the exercise of the same until the remnants are appropriated.

4. Answers to special interrogatories are considered as analogous to the decisory oath of the civil law, and no more evidence for one party than the other, and will not be conclusive for either, where the weight of the other proof in the case preponderates against the fact sworn to, or when, by self contradiction, suspicion attaches to the fidelity of the answers.

[Cited in Havermeyers & E. Sugar Refining Co. v. Compania Transatlantica Espanola, 43 Fed. 91.]

The schooner L. B. Goldsmith was built in Toledo in 1855. In the winter of 1856, she was libeled at Detroit, and decrees pronounced against her to the amount of $750. The vessel was sold by the marshal for $3,-000, and after payment of the decrees, there was a surplus of about $2,250, in the registry. N. & N. W. Edson file their petition, and claim the greater part, and B. F. Bruce & Co. file an answer, and a petition that the amount be paid to them as managing owners. They also file an exception, claiming that the court has no jurisdiction to settle the accounts between the parties. N. & N. W. Edson, then, by leave of the court, propound to B. F. Bruce a number of special interrogatories, as to the matters in difference between them. B. F. Bruce & Co. file their answers thereto, and the matter is referred to a commissioner to take proofs. The commissioner reports the testimony back to the court, and the case is called for hearing.

Howard, Bishop & Holbrook, for N. and N. W. Edson.

Towle, Hunt & Newberry, for B. F. Bruce & Co.

Mr. Bishop. The answers to interrogatories are not full evidence for the party who makes them. Their effect is simply to turn the scale, when the case stands in equilibrio, or in great doubt. 3 Greenl. Ev., § 392; 2 Conkl. Adm. 626–629, and note; Cushman v. Ryan [Case No. 3,515]; 1 Poth. Obl. 826.

Mr. Towle. This case involves a settlement of partnership accounts, a matter not within the jurisdiction of this court. The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175, 182; The Apollo, 1 Hagg. Adm. 306; Atkyns v. Burrows [Case No. 61]; The John, 3 C. Rob. Adm. 288, cited in full in Conkl. Adm. 41–45; Harper v. A New Brig [Case No. 6,090]; Ben. Adm. § 562.

WILKINS, District Judge. Nathan Edson and Nathan W. Edson, of Toledo, Ohio, on the 31st of March last, presented and filed in this court their petition, under the 43d rule of the practice in admiralty prescribed by the supreme court of the United States, for part, or whole of the remnants or surplus in court, of the proceeds of the sale of the L. B. Goldsmith. Having given the notice required, their prayer is resisted

by B. F. Bruce & Co., alleging their interest in these proceeds, as part owners before sale and condemnation.

From the proofs, it appears that this scow was built at Toledo, in the year 1855. On her second voyage, in the fall of that year, she was laid up for the winter at Detroit; libeled by Marcus Emerson and others, and sold, in the spring of 1856, by the decree of this court, for $3,000. The decrees in all amount to about $750, leaving a surplus in the custody of the clerk, of $2,250. The Edsons set forth in their petition (which is not denied by the other claimants, B. F. Bruce & Co.), "that, in the summer of 1855, they, as ship builders, commenced building this scow, at the port of Toledo: that after they had expended $1,600 in her construction, Bruce & Co. purchased from them one-half of their interest for the sum of $800, under an agreement to furnish that amount in goods and boat stores for finishing said scow; and all subsequent necessary expenses in finishing and furnishing, were to be equally borne by both parties."

B. F. Bruce, of the firm of B. F. Bruce & Co., claims as the managing owner of the scow, at the time she was libeled, the whole of the remnants, urging that this court cannot adjudicate upon the subject in controversy, because a settlement of partnership accounts is involved, over which a court of admiralty has no jurisdiction. The position is erroneously assumed. The scow, the subject of the partnership, has been taken from their joint possession; and the controversy is, as to the distribution of the proceeds after sale, and the satisfaction of the decrees obtained against her, under the law prescribed for the government of the courts of the United States in such cases, by the 43d rule of admiralty practice. The party entitled to the remnant or surplus, can only obtain it by petition or motion. And any person having an interest, has a right to intervene "pro interesse suo," upon due notice to adverse parties, whether his application may, or may not involve the settlement of partnership accounts. The court would not, under the circumstances disclosed by the proofs, direct the entire fund to be paid to B. F. Bruce as managing agent of the boat. His agency ceased, when the boat was libeled and sold. The partnership terminated at the same time; and he appears now in court, not as agent of the Edsons, but in his individual character, as claiming only the interest of B. F. Bruce & Co. It would be unjust to the Edsons, to direct this surplus to be paid to Bruce, and turn them over to their bill in chancery for the recovery of their interest. It would likewise operate oppressively, to retain the amount in the registry of the court, until the matter is adjudicated by the same judge, sitting on the equity side of the circuit court for this district.

The admiralty having taken jurisdiction of the subject matter, will, under the practice prescribed by the act of congress, continue the exercise of the same, until the remnants are appropriated; and there is no mode known to the law, by which the amount can be taken from its custody, but in the way indicated by the 43d rule. Moreover, the matter is not so complicated as to disable the admiralty judge from passing upon the accounts of the parties. Sitting in admiralty, he may not enjoy as enlightened a conscience, as when sitting in the circuit, but he possesses the same power of facilitating his labors, by directing computation, and whether in the one or the other relation, the duty is incumbent of passing upon the various items of the accounts of the parties, and allowing or disallowing according to the rules of law, and the weight of the testimony. The sum in the registry is about $2,200. The petitioners and the Bruces will be entitled to an appropriation according to their respective investments in the scow.

First, then, what was the interest of the Edsons? It is conceded that the boat was worth $1,600, when half was purchased by the Bruces. Their payment was $800 in goods to be worked in the boat. Consequently, at the time of the sale, the Edsons' interest was $1,600, and the Bruces' $800. After this, each party is to be credited for their legal advances and services; and to that we proceed. But, at the threshold of this inquiry, we deem it necessary to observe that the answers of B. F. Bruce to the interrogations propounded by the petitioners, are not so free from all shade of suspicion as to render them conclusive as to the disputed facts. Although considered as analogous to the decisory oath of the civil law, yet their effect, at the utmost, is but to turn the scale when in equilibrio, or to settle a doubtful point in the proofs. The answers are, it is true, sworn responses to special interrogatories propounded by the petitioners in an appeal to the conscience of the respondent, and, as held by Judge Ware, in Stutson v. Jordan, 18 Am. Jur. 294, are propounded with the intention of making the decision depend on the answers, and, therefore, to give to them the force of evidence. But they are no more evidence for one party, than for the other, and will not be conclusive for either, where the weight of the other proofs in the case preponderates against the fact sworn to, or where, by self contradiction, suspicion attaches to the fidelity of the answers. Antecedent, then, to any advances by either party, at the time of sale, the Edsons had two-thirds of the scow, and the Bruces the other. This entitles the Edsons to $1,600 to begin with. To this is to be added their proven account, amounting to $1.174; in the total $2,274.90.

What then is the claim of Bruce & Co., as sustained by the proofs? In the first place, the court reject the whole of their private account against the Edsons, amounting to $633.

Because, by the agreement of the parties when the Edsons sold, only the necessary expenses in finishing and furnishing the boat, were chargeable against her, and the fund in court is the fund of the boat, to be distributed among its claimants; and this private account constituted no such lien; and furthermore, it is not a joint account against the Edsons, and most of the items are family supplies, and not a lien upon the scow.

For these reasons, deeming them sufficient, I reject the claim, withholding comment as to the character of the account of the Bruces as compared with the pass-book of the Edsons. Certainly, where a discrepancy exists, the judgment must be in favor of the pass-book, as constituting entries and charges in the handwriting of the Bruces, at the time the charges were made. The account, if just, can be sustained before another tribunal than this; and the Cleveland judgment of $102.00, being of record, is susceptible of stronger proof than parol evidence.

Exhibit B, attached in the response to interrogatory 8, must be sustained with certain deductions, although supported alone by the answer to the interrogatory. These deductions are, 1st. The item for lumber (considered disproved), $22.40. 2d. The item of materials to the amount of $800.00. This sum was the consideration for the purchase of the one-half, and is already allowed to the Bruces.

Exhibit C, in response to the tenth interrogatory, shows the amount of freight received for the two voyages at $485.05, which sum is to be deducted from Exhibit D, which shows the expenses incurred at $606.63; and consequently a loss to the scow of the difference of $120.68, one-half of which must be credited to the Bruces as being their proportion; and they having paid the whole, I do not consider the proof submitted by the petitioner as to what the freight ought to be, as sufficient to overturn the positive account and statement of what it actually was, made in response to the special interrogatory of the petitioner. Yet, from this Exhibit D, should be deducted the bill of Wilcox & Fuller of $17.24, which is unpaid, the towing and captain's wages being allowed. As to the necessity of towing, this court will not now inquire, and also will presume that the other items are unobjectionable, saving the charge made by B. F. Bruce, for his expenses to Detroit, of $39.65, making the deductions from Exhibit D $56.89, and leaving as a correct charge, $549.74. To which add as credit, half of the loss on freight, $56.89. Total, $606.63.

The additional libels filed in favor of Brayman and others, but not prosecuted, constitute no lien upon the remnant. If such liens ever existed, they should have been prosecuted, and they cannot be allowed as a credit to the Bruces, because no proof has been furnished of their payment by them. With these deductions, we state the account of the Bruces.

Exhibit B, $900.92; Exhibit D, and C, $606.63; total, $1,507.55; making the division of the surplus to be in this proportion: the Edsons, $2,774.90; the Bruces, $1,507.55. Let the clerk enter a decree accordingly.